UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KESHA LENNON,<br><br>        Plaintiff,<br><br>v.<br><br>NVR MORTGAGE, *et al.*,<br><br>        Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:23-cv-22855-KMW-SAK<br><br>**MEMORANDUM OPINION** |

**Kesha Lennon**
*Plaintiff,* pro se

**Benjamin R. Wilson, Esq.**
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19103

**Dana E. Feinstein, Esq.**
POLSINELLI PC
1717 Arch Street, Suite 2800
Philadelphia, PA 19103

*Counsel for Defendants NVR Mortgage Finance, Inc. and NVR, Inc.*

**Tracy L. Burnley, Esq.**
MARSHALL DENNEHEY, P.C.
15000 Midlantic Drive, Suite 200
Mount Laurel, NJ 08054

*Counsel for Defendant Legacy Title Agency, LLC*

**WILLIAMS, District Judge:**

## I.   INTRODUCTION

Before the Court are two unopposed Motions to Dismiss the Amended Complaint of *pro se* plaintiff Kesha Lennon ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). The first is brought jointly by defendants NVR Mortgage Finance, Inc. ("NVR Mortgage") and NVR,

1

Inc. (together, "NVR"). The second is brought by defendant Legacy Title Agency, LLC ("Legacy Title").[1] For the reasons set forth below, Defendants' Motions to Dismiss are granted.

## II. BACKGROUND

### A. Relevant Facts

The foregoing facts are alleged in Plaintiff's Amended Complaint and are thus presumed as true for purposes of Defendants' Motions. On December 5, 2021, Plaintiff entered into an agreement with defendant NVR, Inc., doing business as "Ryan Homes," for the construction and purchase of a new townhouse (the "Purchase Agreement") in Sicklerville, New Jersey. (ECF No. 18 at 4.) In the ensuing months, Plaintiff made $17,092 in periodic deposits toward the Purchase Agreement, but sought to finance the remainder through Ryan Homes' mortgage banking affiliate, NVR Mortgage Finance, Inc. ("NVR Mortgage"). (*Id.* at 4–5.) On February 22, 2022, NVR Mortgage approved Plaintiff for a mortgage loan backed by the Federal Housing Administration ("FHA"), which led Ryan Homes to begin construction on the home two days later. (*Id.* at 5.)

In May 2022, Plaintiff obtained and submitted various documents and information in anticipation of a future closing, which NVR Mortgage had requested in anticipation of a future closing. (*Id.*) At some point thereafter, NVR Mortgage requested additional documents and information. Plaintiff does not describe what precisely NVR Mortgage requested, but maintains that it was "not required by FHA guidelines," and presumably refused to provide it. (*Id.*)

Ryan Homes completed construction of the home by June 10, 2022, and set the closing date for July 8, 2022. (*Id.*) The closing date was separately confirmed by defendant Legacy Title Agency, LLC. (*Id.*) However, either on or shortly before the date of closing, Plaintiff contacted

---

[1] Also named as a plaintiff in the Amended Complaint was Elaine Copes, who likewise proceeded in this action *pro se*. Ms. Copes' claims have been dismissed by way of a separate order. To the extent Defendants seek dismissal of Ms. Copes' claims, their Motions are thus denied as moot.

Ryan Homes and voiced her standing objection to NVR Mortgage's prior request for information, to which Ryan Homes advised Plaintiff that her options were to either "1) continue with the process of obtaining a loan with NVR Mortgage or 2) get financing through another lender." (*Id.* at 5–6.) Plaintiff states that those options were "not feasible at the time," and she presumably declined to consummate the mortgage loan and backed out of the Purchase Agreement. (*Id.* at 6.) Thereafter, on July 19, 2022, Ryan Homes informed Plaintiff that it would be retaining her $17,092 deposit for failing to secure financing of the home in good faith. (*Id.*)

Plaintiff initiated the instant action against NVR Mortgage and Ryan Homes (together, the "NVR"), in which she asserts a variety of federal and state law claims against Defendants for certain "malicious and fraudulent acts." (*Id.* at 17.) She now also claims that she did not receive various statutorily mandated disclosures concerning the construction and financing of the home. She thus demands compensatory damages of $623,498, which includes the cost of "replacing a home," as well as other expenses "incurred by not acquiring [the] subject property," such as rent and moving expenses. (*Id.* at 20–21.) She also seeks damages in the amount of $30 million for certain "racial discriminatory acts," as well as punitive damages in the amount of $2,493,992. (*Id.* at 18.)

    **B.**    **Procedural History**

Plaintiff filed her Complaint in this case on December 4, 2023. (ECF No. 1.) After Defendants moved to dismiss the Complaint for failure to state a claim (ECF Nos. 13–14), Plaintiff filed a Motion for Leave to File an Amended Complaint (ECF No. 18.) The Court granted Plaintiff's Motion, accepted her Amended Complaint, and denied Defendants' Motions to Dismiss the initial Complaint as moot. (ECF No. 21.)

3

Thereafter, Defendants filed the instant Motions to Dismiss the Amended Complaint, neither of which Plaintiff timely opposed. (ECF Nos. 22–23.) On August 28, 2024, the Court *sua sponte* granted Plaintiff leave to submit a written opposition to Defendants' Motion and directed her to file the same within fourteen days. (ECF No. 26.) On September 5, 2024, Plaintiff informed the Court via written correspondence that she did not intend to file any response in opposition to Defendants' Motions, but indicated that she "reasserts all legal claims" contained in the Amended Complaint. (ECF No. 28.)

### III. LEGAL STANDARDS

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Complaints subject to dismissal under Rule 12(b)(6) are generally analyzed under the pleading standard set forth in Rule 8(a), which demands that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). Where, like here, a plaintiff proceeds *pro se*, her pleading is liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Even so, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

To the extent a complaint asserts claims sounding in fraud, those claims are subject to the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The purpose of the particularity requirement is to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Though, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "*Pro se* plaintiffs are also not exempt from meeting the heightened pleading requirements of

Rule 9(b) when alleging claims that sound in fraud." *Kaul v. Christie*, 372 F. Supp. 3d 206, 229 (D.N.J. 2019).

## IV. DISCUSSION

The Amended Complaint asserts at least fourteen causes of action for a variety of grievances that center almost exclusively around NVR. As a general matter, Plaintiff alleges, albeit vaguely, that NVR has somehow defrauded or discriminated against her in connection with the construction and financing of her home. She also invariably claims that NVR failed to provide her with certain statutorily mandated disclosures during the course of their dealings. Plaintiff thus asserts claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962[2]; the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; the Equal Credit Opportunity Act ("ECOA"); the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604–05; as well as several claims under New Jersey law.[3]

However, for reasons that are not entirely clear, Plaintiff has also asserted these very same causes of action against Legacy Title, including those that are plainly inapplicable to it. But as far as the Court can discern, the Amended Complaint has failed to allege any facts suggestive of any

---

[2] The Amended Complaint does not expressly invoke RICO, but rather purports to assert two claims for wire fraud, 18 U.S.C. § 1343, and bank fraud, *id.* § 1344. The problem, of course, is that both of these provisions fall within the federal criminal code and cannot form the basis of a civil cause of action. *See Schrager v. Aldana*, No. 12-4758, 2013 WL 12153584, at *2 (D.N.J. Mar. 29, 2013) (acknowledging that violations of criminal code for bank and wire fraud are not privately actionable), *aff'd*, 542 F. App'x 101 (3d Cir. 2013). Mindful of Plaintiff's *pro se* status, the Court construes the Amended Complaint liberally and interprets her claim for wire fraud as alleging a predicate act forming the basis of a civil RICO claim under 18 U.S.C. § 1962(c). The Court does not extend this same construction to Plaintiff's claim for bank fraud which—although similarly actionable under RICO—is clearly inapplicable to this dispute. *See St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 66 (3d Cir. 2009) (noting that "bank fraud," as contemplated under RICO, "occurs when someone defrauds the bank"). That claim is accordingly dismissed with prejudice.

[3] The Court exercises federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a).

6

wrongdoing on the part of Legacy Title. Indeed, as correctly noted by Legacy Title, the only factual allegation offered by the Amended Complaint is where it states that Plaintiff received "[i]nformation verifying [a] closing date from Legacy Title on June 29, 2022." (ECF No. 18 at 5.) Extrapolating from this confirmation, Plaintiff appears to surmise that Legacy Title was somehow aware of or otherwise complicit in the unlawful conduct allegedly perpetrated by NVR. Even under the lenient pleading standards afforded to *pro se* litigants, this is quite obviously insufficient to maintain any cause of action. *See Purisima v. City of Philadelphia*, 738 F. App'x 106, 107 (3d Cir. 2018) (holding that *pro se* litigants must "comply with the basic pleading requirements of Rule 8(a)"). Finding that any further amendment would be futile, the Court grants Legacy Title's Motion and dismisses all claims against it with prejudice. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (reaffirming that leave to amend need not be granted where "amendment would be futile").

Having disposed of Legacy Title's Motion at the outset, the remainder of the Court's inquiry will focus on Plaintiff's claims as they are asserted against NVR.

### A. Federal Claims

#### 1. RICO

The Court first addresses Plaintiff's RICO claim for wire fraud. RICO creates a civil remedy for "any person injured in his business or property" due to a violation of its substantive provisions. 18 U.S.C. § 1964(c). Section 1962(c) of the statute makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). "Racketeering activity" refers to certain criminal "predicate acts," which "may include federal crimes such as

extortion, mail fraud, and wire fraud, or certain state crimes, including extortion." *Care One Mgmt. LLC v. United Healthcare Workers E.*, 43 F.4th 126, 135 (3d Cir. 2022) (citing 18 U.S.C. § 1961(1)). A "pattern of racketeering activity" requires the commission of at least two predicate acts delineated in the statute.

Where, as here, a plaintiff relies on wire fraud as the basis of a RICO violation, she must allege "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or of wire communications in furtherance of the fraudulent scheme." *United States v. Syme*, 276 F.3d 131, 142 n.3 (3d Cir. 2002). In addition, wire fraud "must be pled with specificity as required by Federal Rule of Civil Procedure 9(b)." *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 101 (3d Cir. 2017). "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Upon review of the Amended Complaint here, the Court concludes that Plaintiff has failed to adequately plead a pattern of racketeering activity to state a claim for wire fraud under RICO. The Amended Complaint largely contains vague assertions and conclusory statements that "malicious fraud" is present. As far as the Court can discern, Plaintiff appears to claim that the entire process of obtaining a mortgage loan with NVR was fictitious. Specifically, she alleges that sometime after the closing was confirmed, NVR told her "that the loan had not been submitted to Underwriting." (ECF No. 18 at 5.) She therefore concludes that NVR never had any "intention of providing a mortgage loan" and that "all documentation" it ever electronically transmitted to her was falsified or "fraudulent." (ECF No. 18 at 7.) But while these allegations might be generously construed as pleading some type of misrepresentation, they do not evince a "scheme to defraud,"

much less explain how precisely the "fraudulent" documentation she received was "related to the underlying fraudulent scheme." *Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). "Bare allegations such as these are insufficient to state a claim, especially given that a RICO predicate act of . . . wire fraud must be pleaded with even greater particularity." *Miller v. Burt*, 765 F. App'x 834, 839 (3d Cir. 2019). As such, Plaintiff's RICO claim fails.

2. **CFAA**

Next, Plaintiff claims that NVR violated the CFAA when it allegedly sent "fraudulent information and paperwork to [her] through e-mail/internet." (ECF No. 18 at 18.) In their Motion, the NVR submits that the CFAA is inapplicable to this dispute and that Plaintiff has otherwise failed to allege any statutorily recognized harm. The Court agrees.

While the CFAA generally prohibits unauthorized computer access, the statute makes clear that an action may be brought only if the plaintiff suffers a "root injury of damage or loss." 18 U.S.C. § 1030(g).[4] The statute defines "damage" as "any impairment to the integrity or availability of data, a system, or information." *Id.* § 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of

---

[4] Though not pertinent to the instant analysis, the Court separately notes that this is the first of "a two-part injury requirement as a predicate to a [CFAA] claim." *Ferring Pharms. Inc. v. Watson Pharms., Inc.*, No. 2:12-CV-05824, 2014 WL 12634303, at *5 (D.N.J. Aug. 4, 2014). In addition to pleading a "root injury of damage or loss," a plaintiff must also suffer one of five effects set forth in subsection (c)(4)(A)(i)(I)–(V). *See* 18 U.S.C. § 1030(g). That is, (I) a loss of at least $5,000; (II) an effect on the provision of medical services; (III) a physical injury; (IV) a threat to public health or safety; or (V) damage to a federal government computer used in the administration of justice, national defense, or national security. *See id.* §1030(c)(4)(A)(i)(I)–(V).

service." *Id.* § 1030(e)(11). Because this case obviously does not concern any such damage or loss, Plaintiff's CFAA claim fails.

### 3. RESPA

The Court next turns to Plaintiff's RESPA claim. RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). Congress enacted RESPA to ensure that consumers receive information on the nature and costs of the settlement process, and to protect consumers from unreasonable settlement costs by eliminating kickbacks and referral fees. *See* 12 U.S.C. § 2601. "Congress has explicitly authorized a private right of action for a borrower to enforce RESPA and its regulations, including Regulation X, against a loan servicer." *Lloyd v. New Jersey Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021). To state a RESPA claim, a plaintiff must identify a statutory or regulatory violation, and then assert either actual damages or a pattern or practice of noncompliance. *See Herrera v. Cent. Loan Admin. & Reporting*, No. 17-4774, 2017 WL 4548268, at *2 (D.N.J. Oct. 12, 2017).

Here, the Amended Complaint claims that NVR violated RESPA, but fails to identify any specific provision she believes has been violated. Ostensibly, it might be said that Plaintiff is attempting predicate her RESPA claim based on an alleged disclosure failure. The Amended Complaint alleges that NVR did not provide Plaintiff with HUD-92900-B ("HUD Interest Rate Disclosure Statement"), as required by the FHA's Single Family Housing Policy Handbook 4000.1 ("Handbook 4000.1"), and further claims that she "did not receive full disclosure concerning loan costs." (ECF No. 18 at 12.) Even so, this is not a RESPA violation. *See Lopez v. Nationstar Mortg. LLC*, No. 22-6384, 2023 WL 5164120, at *4 (D.N.J. Aug. 11, 2023) (dismissing RESPA claim) ("[Plaintiff] cannot base her claim solely on a violation of Handbook 4000.1[.]"). And even if

10

HUD-92900-B was a RESPA-mandated disclosure, it is well settled that there is no private cause of action for violations of the statute's disclosure provisions. *See, e.g.*, *Shahin v. PNC Bank*, 625 F. App'x 68, 71 (3d Cir. 2015) (holding that RESPA did not provide a private cause of action for lender's alleged failure to provide prospective borrower with a good faith estimate). Thus, Plaintiff RESPA claim must be dismissed.

    4. **TILA**

Plaintiff also claims that NVR has violated TILA. Here too, Plaintiff does not allege any specific statutory violation or otherwise plead facts that are readily suggestive of a violation. The Amended Complaint could be generously construed as alleging that NVR did not disclose certain details concerning the terms and costs of her loan, as required by TILA. But even assuming that is true, the allegations of the Amended Complaint do not support an inference that a TILA violation has occurred.

TILA "regulates the relationship between lenders and consumers, including mortgagees and mortgagors, by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). Two particular disclosures are relevant to Plaintiff's claim here. The first is an initial "good faith estimate" of certain loan costs and terms, which lenders are statutorily required to provide to a prospective borrowers within three days of receiving a loan application. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 1026.19(e). Before the consummation of the mortgage loan, the lender is also required to provide the borrower with a "closing disclosure" reflecting the actual terms and costs of the transaction to be settled. *See* 15 U.S.C. § 1638(b)(2)(B); 12 C.F.R. § 1026.19(f). TILA provides a private cause of action against any creditor who fails to comply with these requirements. *See* 15 U.S.C. § 1640.

Here, the Amended Complaint does not allege that NVR failed to provide Plaintiff with a good faith estimate or a final disclosure. Indeed, it expressly alleges that Plaintiff respectively received both on December 3, 2021, and March 2, 2022. Plaintiff has not attached either to her Amended Complaint, but appears to claim that there were differences in certain terms (*e.g.* interest rate, mortgage payment) between the initial estimate and the final disclosure. However, mere discrepancies between these two documents are not, in and of themselves, reasonably suggestive of a TILA violation. As one court has previously noted, "there are a plethora of possible reasons—not involving defendants' lack of good faith—as to why the estimated figures fluctuated by the time of settlement." *Brophy v. Chase Manhattan Mortg. Co.*, 947 F. Supp. 879, 885 (E.D. Pa. 1996). To make out a plausible claim, Plaintiff must at a minimum explain how these disclosures were so inadequate as to violate TILA or Regulation Z. *See, e.g.*, 12 C.F.R. § 226.17(c) (prescribing specific disclosure duties in connection with good faith estimates). Without more, no plausible inference can be drawn that NVR's estimates were not made in good faith.

### 5. ECOA

Plaintiff next alleges that NVR discriminated against her in violation of the ECOA. Under the ECOA, a creditor may not discriminate against any applicant "on the basis of race[.]" 15 U.S.C. § 1691(a)(1). To establish a *prima facie* case under the ECOA, a plaintiff must show that (1) she was a member of a protected class; (2) she applied for credit from the defendant; (3) she was qualified for the credit; and (4) despite qualifying, she was denied credit. *See Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772 (3d Cir. 2019). A plaintiff may support an assertion of discrimination by showing that the defendant "has treated more favorably similarly situated persons not within the protected class." *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999).

Here, the Amended Complaint asserts only a conclusory accusation that NVR "committed various racial discriminatory acts." (ECF No. 18 at 21.) It does not allege that Plaintiff is a member of a protected class. Nor does it make any attempt to show that other similarly situated persons outside of the protected class were treated more favorably. "[W]hile a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Shahin v. PNC Bank*, 625 F. App'x 68, 70 (3d Cir. 2015) (internal quotation marks omitted) (omissions in original). Because this standard has not been met here, Plaintiff's ECOA claim must be dismissed.

### 6. FHA

Plaintiff has also asserted a discrimination claim under the FHA, which parallels her ECOA claim. The FHA prohibits "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race[.]" 42 U.S.C. § 3604(b). It further makes it unlawful for

> any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race[.]

*Id.* § 3605(a). These provisions "can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011). In order to prevail on intentional discrimination claims, the plaintiff must show that "some discriminatory purpose was a motivating factor behind the challenged action." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176–77 (3d Cir. 2005) (internal quotation marks omitted).

13

As with her ECOA claim, the Court also finds that Plaintiff has failed to allege sufficient facts to support a claim for discrimination under the FHA. Again, even assuming that Plaintiff is a member of a protected class, her Amended Complaint has not offered any facts plausibly suggesting that she has suffered any adverse action for a discriminatory reason. *See Shahin*, 625 F. App'x at 71 (affirming dismissal of FHA and ECOA where facts did not support plausible inference of discrimination). To the contrary, it merely "consists of vague allegations of wrongdoing with no factual elaboration," which are "insufficient to state a claim." *White v. Barbe*, 767 F. App'x 332, 335 (3d Cir. 2019) (affirming dismissal of FHA claim).

### 7. False Statements to HUD (18 U.S.C. § 1010)

Lastly, Plaintiff alleges a violation of 18 U.S.C. § 1010, a provision of the federal criminal code forbidding the use of counterfeit paperwork to obtain a loan from the U.S. Department of Housing and Urban Development. Whatever wrongdoing Plaintiff attempts to allege in support of this claim, it instantly fails because § 1010 does not provide a private cause of action. *See Hocker v. CitiMortgage, Inc.*, No. 1:09-CV-00973, 2012 WL 174967, at *4 (M.D. Pa. Jan. 20, 2012) (dismissing claim under § 1010 because it "does not provide a private right of action"); *Angeloff v. Deardorff*, No. 1:09-CV-2169, 2010 WL 4853788, at *3 (M.D. Pa. Nov. 23, 2010) (noting that "courts have refused to read an implied right of action into the statute").

### 8. Leave to Amend

Having dismissed each of Plaintiff's federal claims against NVR, the Court next determines whether Plaintiff should be granted leave to submit an amended pleading. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Here, the Court first finds that it would be futile to permit Plaintiff to amend her claims under RICO, CFAA, RESPA, and the criminal code. To this end, the Court grants NVR's Motion and dismisses those claims with prejudice.

With respect to Plaintiff's remaining federal claims—namely those under TILA, ECOA, and the FHA—the Court cannot determine at this time whether further amendment would be futile. While Plaintiff was previously granted leave to submit the Amended Complaint here, she did not, as she does now, have the benefit of the Court's analysis concerning the sufficiency of her pleading. In light of the liberal pleading standard governing amendments to the pleadings of *pro se* litigants, the Court will dismiss these claims without prejudice and allow Plaintiff one final opportunity to plead facts that can plausibly support them. No further amendment will be granted.

### B. State Law Claims

As previously indicated, Plaintiff has also asserted various state law claims against NVR ranging from breach of contract to consumer fraud. However, given the number of factual deficiencies plaguing the Amended Complaint, the Court will not substantively address Plaintiff's state law claims until she has had an opportunity to submit an amended pleading. However, to the extent this new pleading fails to successfully set forth claims under TILA, ECOA, and the FHA, Plaintiff is advised that the Court will decline exercising supplemental jurisdiction over her state law claims and dismiss the same. *See* 28 U.S.C. § 1367(c)(3) (permitting dismissal of state law claims following dismissal of all claims over which court had original jurisdiction).

### V. CONCLUSION

As against Legacy Title, the Amended Complaint fails to allege any facts to justify it being named as a defendant in this action. The Court accordingly grant's Legacy Title's Motion and dismisses all claims against it with prejudice. For the reasons explained above, the Court will also

grant NVR's Motion, but will allow Plaintiff to replead her TILA, ECOA, FHA, and state law claims. The remainder of the Amended Complaint is dismissed with prejudice.

An Order consistent with this Opinion shall be issued.

Dated:  November 26, 2024

*/s/ Karen M. Williams*
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE