**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KESHA LENNON,<br><br>Plaintiff,<br><br>v.<br><br>NVR MORTGAGE, *et al.*,<br><br>Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:23-cv-22855-KMW-SAK<br><br>**MEMORANDUM OPINION** |

**Kesha Lennon**
*Plaintiff,* pro se

**Benjamin R. Wilson, Esq.**
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19103
*Counsel for Defendants NVR Mortgage Finance, Inc. and NVR, Inc.*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Before the Court is the motion filed by Defendants NVR Mortgage Finance, Inc. ("NVRM") and NVR, Inc. ("Ryan Homes") (together, "Defendants") seeking dismissal of Plaintiff Kesha Lennon's ("Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed the motion. For the reasons set forth below, Defendants' motion is granted.

## II. BACKGROUND

The Court has previously recounted the facts giving rise to this action and repeats only those relevant to the instant motion. The following facts are drawn from Plaintiff's Second

Amended Complaint and the exhibits attached thereto, which the Court accepts as true for present purposes.

In November 2021, Plaintiff sought to purchase a newly constructed home in Sicklerville, New Jersey, from NVR, Inc., doing business as "Ryan Homes." (ECF No. 32 at 1, 3.) To finance the purchase, Plaintiff and her mother, Elaine Copes, applied for an FHA-backed mortgage loan through NVRM's online portal. (*Id.* at 3, 12.) Two days later, NVRM loan officer Melissa Grippo confirmed receipt of Plaintiff's electronically submitted mortgage information. (*Id.* at 3, 13.) Plaintiff thereafter executed a purchase agreement with Ryan Homes for the construction and purchase of the property. (*Id.* at 3, 14–17.)

In the ensuing months, NVRM attempted to gather information and documentation from Plaintiff in connection with its initial underwriting. On December 19, 2021, Grippo advised Plaintiff that the initial disclosures had been completed and requested various supporting materials, including recent paystubs, W-2s, verification of child-support income, and tax and insurance information concerning Copes's residence. (*Id.* at 20.) Correspondences attached to the Second Amended Complaint show that Plaintiff responded to NVRM's request, but her responses frequently did not supply the specific documentation requested in a complete or usable form: some documents had not yet been provided; others were incomplete, fragmentary, outdated, or inconsistent with other information in the file; and still others required supporting documentation or clarification. (*Id.* at 16–20.)

On February 22, 2022, NVRM informed Plaintiff that her mortgage application had been "conditionally approved." (*Id.* at 40.) The letter explained that additional documentation remained necessary to complete final underwriting and funding and that the listed conditions had to be satisfied before the mortgage could be cleared for closing. (*Id.* at 40–43.) The accompanying

checklist identified fifteen underwriting conditions, to be satisfied "within 30 days after the start of construction of [the] new home." (*Id.* at 41.) Thos conditions included, among other things, submitting updated income and employment documentation, verification of expenses associated with property already owned, documentation concerning child-support income and its continuation, proof that specified debts had been paid, and bank statements demonstrating sufficient funds to close and documenting certain deposits. (*Id.* at 41–43.) Construction on the home began on February 24, 2022. (ECF No. 18 at 5.)

On March 4, 2022, NVRM issued an updated Loan Estimate reflecting, among other things, a $335,637 loan amount and a 4.125% interest rate. (ECF No. 32 at 47–49.) NVRM separately issued a rate-lock agreement that same day establishing a 4.125% rate through August 29, 2022. (*Id.* at 50–51.)

Meanwhile, Ryan Homes continued construction while Plaintiff's application remained pending and subject to the February 22 conditions. (*Id.* at 8, 40–43.) As the anticipated closing approached, NVRM continued to seek information needed to clear those conditions. On May 10, 2022, NVRM advised Plaintiff that settlement was tentatively expected in July and that it was updating the loan application to clear the remaining conditions. (*Id.* at 44.) The letter requested, among other things, current bank statements and paystubs, documentation concerning child-support income and its continuation, proof that specified debts had been paid, and documentation concerning deposits and funds available for closing. (*Id.*) Plaintiff thereafter provided several bank statements. (*Id.* at 45.) Construction was completed on June 10, 2022, and closing was tentatively scheduled for July 8. (*Id.* at 56–57.)

NVRM, however, had not yet received all of the information it had requested. On June 20, NVRM loan processor Patricia Magliocco advised Plaintiff that several items remained

outstanding and that further delay could jeopardize the anticipated closing date. (*Id.* at 46.) The following day, Magliocco again requested the outstanding materials, including a bank statement from Plaintiff's bank account, statements from Copes's bank account, and documentation concerning several large deposits into Plaintiff's account. (*Id.*) Plaintiff responded that she had already provided "all [her] bank statements" and expressed concern that further delay would require her to incur another month's rent. (*Id.*) Plaintiff separately contacted Ryan Homes complaining of NVRM's requests. Ryan Homes responded that Plaintiff could either continue seeking financing through NVRM or obtain financing from another lender.

Plaintiff did not pursue either option, and she ultimately abandoned her loan application and backed out of the closing. Thereafter, Ryan Homes retained Plaintiff's previously paid $17,092 deposit, citing a failure to secure financing in good faith. (*Id.* at 59.)

### A. <u>Procedural History</u>

Plaintiff commenced this action on December 4, 2023. (ECF No. 1.) After Defendants moved to dismiss the initial Complaint for failure to state a claim (ECF Nos. 13–14), Plaintiff sought leave to file an Amended Complaint. (ECF No. 18.) The Court granted Plaintiff's request, accepted the Amended Complaint for filing, and denied Defendants' initial motion to dismiss as moot. (ECF No. 21.) Defendants then moved to dismiss the Amended Complaint. (ECF Nos. 22–23.)

On November 26, 2024, the Court granted Defendants' motions and dismissed all of Plaintiff's federal claims. *See Lennon v. NVR Mortg.*, No. 1:23-cv-22855-KMW-SAK, 2024 WL 4891738, at *1 (D.N.J. Nov. 26, 2024). However, three of those claims were dismissed without prejudice, and the Court afforded Plaintiff one final opportunity to amend her pleading to allege facts sufficient to state claims under the Equal Credit Opportunity Act ("ECOA"), the Fair Housing

Act ("FHA"), and the Truth in Lending Act ("TILA"). The Court did not address Plaintiff's state-law claims at that time, but advised that it would decline to exercise supplemental jurisdiction over those claims if Plaintiff again failed to state a viable federal cause of action.

Plaintiff thereafter filed the Second Amended Complaint, reasserting her claims under the ECOA, FHA, and TILA, along with several claims arising under New Jersey law. (ECF No. 32.) Defendants now move to dismiss the Second Amended Complaint, arguing that Plaintiff has again failed to plead facts sufficient to state any claim. (ECF No. 37.)

## III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Complaints subject to dismissal under Rule 12(b)(6) are generally analyzed under the pleading standard set forth in Rule 8(a), which demands that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Where, as here, a plaintiff proceeds *pro se*, her pleading is liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Even so, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. DISCUSSION

The Second Amended Complaint reasserts the three previously discussed claims under the ECOA, the FHA, and the TILA, as well as several claims under New Jersey law. The Court addresses the federal claims first.

### A. Lending Discrimination Claims

Plaintiff's ECOA and FHA claims here rest on substantially the same theory. She alleges that NVRM subjected her to more burdensome lending requirements by insisting on documentation and verifications that, in her view, were unnecessary for underwriting purposes.[1]

[1] Plaintiff appears to premise this contention on the fact that certain documents requested by NVR Mortgage were not expressly identified in a handbook published by the U.S. Department of Housing and Urban Development ("HUD"). But even assuming this handbook has relevance here, it does not purport to limit the universe of information a lender may obtain in evaluating a mortgage application. Moreover, Regulation B generally permits a creditor to "request any information in connection with a credit transaction," subject to specified limitations, 12 C.F.R. § 1002.5(a)(1), and to "consider any information obtained" so long as it is not used to discriminate against an applicant on a prohibited basis, *id.* § 1002.6(a).

On that premise, Plaintiff contends that NVRM effectively denied her mortgage application, and she attributes that denial to race discrimination in violation of the ECOA and the FHA.[2]

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). The FHA similarly prohibits any person or entity "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). To state a claim under either statute, a plaintiff generally must allege nonconclusory facts supporting a plausible inference that she was denied credit, or otherwise subjected to adverse lending treatment, because of her membership in a protected class. *See Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772 (3d Cir. 2019); *see also Shahin v. PNC Bank*, 625 F. App'x 68, 70 (3d Cir. 2015). Such an inference can arise, for example, where the defendant is alleged to have "treated more favorably similarly situated persons not within the protected class." *Stefanowicz*, 765 F. App'x at 772 (quoting *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999)).

The Court previously dismissed Plaintiff's ECOA and FHA claims because she alleged only that NVRM had committed unspecified "racial discriminatory acts," without identifying her

---

[2] Plaintiff also appears to assert a separate ECOA claim based on Regulation B's requirement that a creditor provide notice of action taken within thirty days after receiving a completed application. *See* 12 C.F.R. § 1002.9(a)(1)(i). Plaintiff alleges that NVRM received her application on November 30, 2021, and therefore was required to act by December 30. (ECF No. 32 at 4–5.) Even assuming that Plaintiff suffered actual damages from the alleged procedural violation, she has not adequately pleaded that any such violation occurred at all. Regulation B measures the thirty-day period from the creditor's receipt of a completed application, not merely from its initial receipt of mortgage information. *See also* 12 C.F.R. § 1002.2(f) (stating that an application is "completed" when the creditor "has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested"). Plaintiff has alleged no facts plausibly suggesting that NVRM had received all such information by November 30, 2021.

protected status or pleading facts suggesting disparate treatment. (ECF No. 30 at 12–13.) Although Plaintiff now alleges that she is African American, she still pleads no facts plausibly suggesting that NVRM subjected her to adverse lending treatment because of her race.

The Second Amended Complaint identifies no discriminatory statement, race-based policy, similarly situated applicant who received more favorable treatment, or any circumstance connecting NVRM underwriting process to a discriminatory motive. To the contrary, Plaintiff's exhibits show that NVRM conditionally approved her application and continued to request documents concerning ordinary underwriting matters related to her income, assets, employment, debts, and funds to close. These are facially neutral requests. *See Parker v. Route 22 Honda*, No. 22-7117, 2023 WL 157587, at *2 (D.N.J. Jan. 11, 2023) (dismissing ECOA claim where plaintiff "refused to provide certain personal information to Defendant which, as a practical matter, would be required . . . in order for it to make an informed decision on whether to even extend an offer of credit to her"). Plaintiff's belief that NVRM required more information than she considered necessary therefore does not, without more, support a plausible inference of discrimination. Accordingly, Plaintiff fails to state a lending-discrimination claim under either the ECOA or the FHA. *See Shih v. Union Ctys. Econ. Dev. Corp.*, No. 23-cv-22036, 2024 WL 5165326, at *5 (D.N.J. Dec. 19, 2024) (dismissing lending-discrimination claim where plaintiff failed to plead facts supporting inference of discriminatory motive).

**B. <u>TILA</u>**

TILA and its implementing regulation, Regulation Z, require creditors to provide consumers with a Loan Estimate disclosing specified loan terms and estimated costs of a proposed mortgage transaction. *See* 15 U.S.C. § 1638; 12 C.F.R. §§ 1026.19(e), 1026.37. Those disclosures must be based on the best information reasonably available when they are provided. Regulation Z

nevertheless contemplates that estimated terms and costs may change as a mortgage application progresses and provides for revised disclosures in specified circumstances. *See* 12 C.F.R. § 1026.19(e)(3)(iv).

Liberally construed, Plaintiff appears to contend that NVRM initial December 2021 Loan Estimate was inaccurate or not made in good faith because later documents reflected different loan terms. Specifically, she alleges that certain figures appearing in the February 2022 conditional approval differed from the initial estimate and that the March 2022 Loan Estimate reflected still different figures. (ECF No. 32 at 27–28.) But Plaintiff's theory confuses estimated terms with fixed loan terms. A Loan Estimate is an estimate of the proposed transaction at a particular point in the lending process; it does not itself lock an interest rate or guarantee that every disclosed figure will remain unchanged. And Plaintiff does not attach the December Loan Estimate, identify the terms it contained, or allege facts suggesting that any estimate was inaccurate based on the information available to NVRM when it was issued. Her exhibits establish only that an initial Loan Estimate was provided. (*Id.* at 18–19.)

The later documents seem to reinforce the point. The February 22 conditional approval expressly identified the 3.25% qualifying rate as "Floating," while the March 4 Loan Estimate reflected a 4.125% rate that NVRM locked that same day. Regulation Z permits revised disclosures when an interest rate is locked after the initial Loan Estimate and rate-dependent charges change because of the lock. *See* 12 C.F.R. § 1026.19(e)(3)(iv)(D). NVRM issued the revised Loan Estimate the same day it locked the rate. Accordingly, the later documents do not plausibly suggest that the initial estimate was inaccurate or made in bad faith; they show only that the terms of a pending mortgage transaction changed as the application progressed. Because Plaintiff identifies

no disclosure that was inaccurate when made and no other respect in which NVRM failed to comply with TILA or Regulation Z, the TILA claim will be dismissed.

In conclusion, Plaintiff has again failed to state a plausible claim under the ECOA, FHA, or TILA. The Court has already afforded Plaintiff an opportunity to cure the deficiencies discussed above, yet those deficiencies persist. Nothing in the Second Amended Complaint suggests that another amendment would cure them. Finding that further amendment would be futile, the Court grants Defendants' motion and dismisses Plaintiff's federal claims with prejudice.

### C. Remaining State Law Claims

In its prior Opinion, the Court declined to substantively address Plaintiff's state-law claims until she had received an opportunity to amend her pleading, but expressly advised that, should Plaintiff again fail to state a federal claim, the Court would decline to exercise supplemental jurisdiction over those claims. That circumstance is now present.

28 U.S.C. § 1367(c)(3) grants district courts discretion to decline supplemental jurisdiction once it "has dismissed all claims over which it has original jurisdiction." The Third Circuit has long instructed that, "absent extraordinary circumstances," supplemental jurisdiction over a plaintiff's state-law claims "should be declined where [her] federal claims are no longer viable." *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (internal quotation marks omitted). Observing no extraordinary circumstances here, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Those claims will be dismissed without prejudice so that Plaintiff may pursue them in an appropriate state forum.

## V. CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion and dismisses Plaintiff's federal claims with prejudice. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, those claims are dismissed without prejudice to Plaintiff's pursuit of them in an appropriate state forum.

Dated: November 2nd, 2026

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE